No. 24-1042

---

# In the United States Court of Appeals for the Seventh Circuit

---

JIM ROSE and ANITA GIAN,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants,*

v.

MERCEDES-BENZ USA, LLC, and
MERCEDES-BENZ GROUP AG,
*Defendants-Appellees.*

---

On appeal from the United States District Court
for the Northern District of Illinois, Eastern Division,
No. 22-cv-06099,
before Hon. Judge Mary M. Rowland

---

## APPELLEES' RESPONSE BRIEF

---

Troy M. Yoshino
   *Counsel of Record*
Winston & Strawn LLP
101 California Street
35th Floor
San Francisco, CA 94111
(415) 591-1000
tyoshino@winston.com

Jeff Wilkerson
Winston & Strawn LLP
300 South Tryon Street
16th Floor
Charlotte, NC 28202
(704) 350-7700
jwilkerson@winston.com

Sarah A. Krajewski
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
skrajewski@winston.com

*Counsel for Appellees Mercedes-Benz Group AG and Mercedes-Benz USA, LLC*

# DISCLOSURE STATEMENT

Appellate Court No: <u>24-1042</u>

Short Caption: <u>Jim Rose and Anita Gian v. Mercedes-Benz USA, LLC, et al.</u>

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

<u>Mercedes-Benz USA, LLC; Mercedes-Benz Group AG f/k/a Daimler AG</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Winston & Strawn LLP</u>

(3)     If the party or amicus is a corporation:

(i)     Identify all its parent corporations, if any; and

<u>For Mercedes-Benz USA, LLC: Mercedes-Benz Group AG; Mercedes-Benz Capital Nederland B.V.; Mercedes-Benz North America Corporation</u>

<u>For Mercedes-Benz Group AG: N/A</u>

(ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>N/A.</u>

Attorney's Signature: <u>/s/ Troy M. Yoshino</u>          Date: April 10, 2024

Attorney's Printed Name: <u>Troy M. Yoshino</u>

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d): <u>Yes</u>

Address: <u>101 California Street, 35th Floor, San Fransisco, CA 94111</u>

Phone Number: <u>(415) 591-1421</u>          Fax Number: <u>(415) 591-1400</u>

E-Mail Address: <u>tyoshino@winston.com</u>

Appellate Court No: <u>24-1042</u>

Short Caption: <u>Jim Rose and Anita Gian v. Mercedes-Benz USA, LLC, et al.</u>

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

     <u>Mercedes-Benz USA, LLC; Mercedes-Benz Group AG f/k/a Daimler AG</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     <u>Winston & Strawn LLP</u>

(3)    If the party or amicus is a corporation:

     (i)    Identify all its parent corporations, if any; and

          <u>For Mercedes-Benz USA, LLC: Mercedes-Benz Group AG; Mercedes-Benz Capital Nederland B.V.; Mercedes-Benz North America Corporation</u>

          <u>For Mercedes-Benz Group AG: N/A</u>

     (ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

          <u>N/A</u>

Attorney's Signature: <u>/s/ Jeffrey S. Wilkerson</u>          Date: April 10, 2024

Attorney's Printed Name: <u>Jeffrey S. Wilkerson</u>

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d): <u>No</u>

Address: <u>300 South Tryon Street, 16th Floor, Charlotte, NC 28202</u>

Phone Number: <u>(704) 350-7714</u>          Fax Number: <u>(704) 350-7800</u>

E-Mail Address: <u>jwilkerson@winston.com</u>

Appellate Court No: <u>24-1042</u>

Short Caption: <u>Jim Rose and Anita Gian v. Mercedes-Benz USA, LLC, et al.</u>

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

    <u>Mercedes-Benz USA, LLC; Mercedes-Benz Group AG f/k/a Daimler AG</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Winston & Strawn LLP</u>

(3)    If the party or amicus is a corporation:

        (i)    Identify all its parent corporations, if any; and

            <u>For Mercedes-Benz USA, LLC: Mercedes-Benz Group AG; Mercedes-Benz Capital Nederland B.V.; Mercedes-Benz North America Corporation</u>

            <u>For Mercedes-Benz Group AG: N/A</u>

        (ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

            <u>N/A</u>

Attorney's Signature: <u>/s/ Sarah A. Krajewski</u>        Date: April 10, 2024

Attorney's Printed Name: <u>Sarah A. Krajewski</u>

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d): <u>No</u>

Address: <u>35 West Wacker Drive, Chicago, IL 60601</u>

Phone Number: <u>(312) 558-8132</u>        Fax Number: <u>(312) 558-5700</u>

E-Mail Address: <u>skrajewski@winston.com</u>

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. i

TABLE OF AUTHORITIES .................................................................. v

INTRODUCTION ............................................................................. 1

STATEMENT OF JURISDICTION ...................................................... 2

STATEMENT ON ORAL ARGUMENT ............................................... 4

STATEMENT OF THE ISSUE .......................................................... 4

STATEMENT OF THE CASE ........................................................... 4

A.    Plaintiffs activated mbrace with notice of the Terms of Service. ........ 4
B.    Plaintiffs renewed and used mbrace for over seven years. ................. 7
C.    Plaintiffs sue Mercedes and refuse to arbitrate. ............................... 7

SUMMARY OF THE ARGUMENT ..................................................... 8

STANDARD OF REVIEW ................................................................ 9

ARGUMENT ................................................................................ 10

I.    Plaintiffs had reasonable notice of the Terms of Service when they activated, paid for, used, and renewed mbrace. ..................................... 11

II.    Mercedes reasonably understood plaintiffs' activations, renewals, and use of mbrace over seven years as manifestation of assent to the Terms of Service. ................................................................................ 14

III.   Plaintiffs' attacks on Mercedes' evidence are baseless ......................... 15

IV.   Plaintiffs' declarations do not show any genuine issue of fact as to notice of, or assent to, the Terms of Service. ....................................... 19

CONCLUSION .............................................................................. 22

CERTIFICATE OF COMPLIANCE .................................................. 23

CERTIFICATE OF SERVICE ......................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Arbogast v. Chi. Cubs Baseball Club, LLC,*
194 N.E.3d 534 (Ill. App. Ct. 2021) ................................................................... 9, 11

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ........................................................................................ 10

*Auyeung v. Toyota Motor Sales, USA, Inc.,*
2019 WL 3385189 (N.D. Ill. July 1, 2019) ......................................................... 12

*Boomer v. AT&T Corp.,*
309 F.3d 404 (7th Cir. 2002) ................................................................. 14, 16, 20

*Bradley v. Vill. of Univ. Park,*
59 F.4th 887 (7th Cir. 2023) .............................................................................. 10

*Brickstructures, Inc. v. Coaster Dynamix, Inc.,*
952 F.3d 887 (7th Cir. 2020) ............................................................................... 9

*City of E. St. Louis v. Netflix, Inc.,*
83 F.4th 1066 (7th Cir. 2023) .......................................................................... 2, 3

*Edmundson v. Klarna, Inc.,*
85 F.4th 695 (2d Cir. 2023) ............................................................................... 11

*Emmanuel v. Handy Techs., Inc.,*
992 F.3d 1 (1st Cir. 2021) .................................................................................. 11

*Gilbert v. I.C. Sys., Inc.,*
2021 WL 292852 (N.D. Ill. Jan. 28, 2021) .............................................. 17, 18, 19

*Gupta v. Morgan Stanley Smith Barney, LLC,*
934 F.3d 705 (7th Cir. 2019) ................................................................. 11, 14, 15

*Hancock v. Am. Tel. & Tel. Co.,*
701 F.3d 1248 (10th Cir. 2012) ......................................................................... 11

*Hill v. Gateway 2000, Inc.,*
105 F.3d 1147 (7th Cir. 1997) ........................................................................... 11

*James v. McDonald's Corp.,*
417 F.3d 672 (7th Cir. 2005) ....................................................................... 11, 13

*Kass v. PayPal Inc.*,
   75 F.4th 693 (7th Cir. 2023) ........................................................ 9, 10, 16, 20

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) ................................................................................. 10

*McCaskill v. SCI Mgmt. Corp.*,
   298 F.3d 677 (7th Cir. 2002) .................................................................. 4

*Melvin v. Big Data Arts, LLC*,
   553 F. Supp. 3d 447 (N.D. Ill. 2021) ............................................... 17, 18

*Novitsky v. Am. Consulting Eng'g, LLC*,
   196 F.3d 699 (7th Cir. 1999) .................................................................. 12

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ................................................................... 11

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,
   648 F.3d 258 (5th Cir. 2011) .................................................................. 11

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) .................................................................. 14

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .................................................................... 15

*Schafer v. AT&T Wireless Servs., Inc.*,
   2005 WL 850459 (N.D. Ill. Apr. 1, 2005) ......................................... 12, 14

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ........................................................ 9, 10, 11

*Smith v. Spizzirri*,
   2024 WL 133822 (U.S. Jan. 12, 2024) .................................................... 4

*Spivey v. Vertrue, Inc.*,
   528 F.3d 982 (7th Cir. 2008) ................................................................... 2

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*,
   969 F.2d 585 (7th Cir. 1992) .................................................................. 9

*Stockman v. Midland Credit Mgmt., Inc.*,
   2022 WL 1499811 (N.D. Ill. May 12, 2022) .......................................... 14

*Taylor v. Samsung Elecs. Am.*,
   2018 WL 3921145 (N.D. Ill. Aug. 16, 2018) .......................................... 12

*Tinder v. Pinkerton Sec.,*
    305 F.3d 728 (7th Cir. 2002) .................................................................. 10, 16, 20

*Treiber & Straub, Inc. v. UPS, Inc.,*
    474 F.3d 379 (7th Cir. 2007) .................................................................. 11, 12, 14

*United States v. Romero,*
    2017 WL 61025 (N.D. Ill. Jan. 5, 2017) ............................................................... 21

*Ware v. Best Buy Stores, LP,*
    6 F.4th 726 (7th Cir. 2021) ....................................................................................... 2

**Statutes**

9 U.S.C. § 3 ........................................................................................................................ 4

9 U.S.C. § 4 ...................................................................................................................... 10

9 U.S.C. § 16 ................................................................................................................. 3, 4

15 U.S.C. § 2310 ............................................................................................................... 2

28 U.S.C. § 1291 ............................................................................................................... 3

28 U.S.C. § 1332 ........................................................................................................... 2, 3

**Other Authorities**

7th Cir. R. 32 .................................................................................................................. 23

7th Cir. R. 34 .................................................................................................................... 4

Fed. R. App. P. 4 .............................................................................................................. 4

Fed. R. App. P. 32 .......................................................................................................... 23

Fed. R. App. P. 34 ............................................................................................................ 4

## INTRODUCTION

The district court did not err in dismissing this case and compelling arbitration. Plaintiffs-Appellants ("plaintiffs") sued Appellees (collectively, "Mercedes") for various common-law and statutory claims because the "mbrace" telematics system in plaintiffs' Mercedes-Benz vehicles allegedly became inoperable after third-party wireless companies decommissioned their 3G networks. But it is *undisputed* on appeal that the mbrace service was governed by terms of service with a conspicuous arbitration provision covering the claims at issue. Plaintiffs argue only that there was a triable fact issue as to whether they assented to those terms.

The district court correctly rejected that argument. Mercedes proffered unrebutted evidence that plaintiffs were informed of the Terms of Service agreement ("TOS") when activating their mbrace service (either at the dealer or via phone call), in a Welcome Kit and Welcome Email sent shortly thereafter (the latter containing a link to the TOS), and before renewing and paying for mbrace subscriptions (which both plaintiffs did). The TOS conspicuously disclosed both the arbitration agreement and that continued use of the mbrace service (which could be canceled at any time) constituted acceptance. Yet both plaintiffs continued to use mbrace, as well as renew and pay for it. That is more than enough to constitute the "outward expression[]" of assent this Court has long held is sufficient.

Plaintiffs' only evidence were declarations saying they could not *recall* being informed of the TOS. That does not create a genuine issue of fact. The district court got it right.

1

## STATEMENT OF JURISDICTION

Plaintiffs' jurisdictional statement, even considering their supplemental statements of jurisdiction, is not complete and correct.

**Original jurisdiction.** The United States District Court for the Northern District of Illinois, Eastern Division, has original jurisdiction over class actions under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), when (1) the class has 100 or more members; (2) the aggregate amount in controversy exceeds $5 million, excluding interest and costs; and (3) at least one member of the class and one defendant are citizens of different states. The amount in controversy need only be plausible. *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). For purposes of CAFA, an LLC is a citizen only of the state in which it is formed and the state in which it has its principal place of business. *City of E. St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1071 (7th Cir. 2023) (interpreting 28 U.S.C. ¶ 1332(d)(10)).[1]

Plaintiffs filed suit on behalf of a putative nationwide class that they allege includes "hundreds of thousands" of Mercedes-Benz USA, LLC ("MBUSA")'s customers. Compl. ¶ 89. Their proposed class includes all those who own or have owned Mercedes-Benz vehicles that no longer support 3G mbrace service. *Id.* ¶¶ 2, 3, 84. Plaintiffs put $5 million in controversy, seeking compensatory and punitive

---

[1] The district court did not have and, because it had CAFA jurisdiction, did not need federal-question or supplemental jurisdiction over this case. Plaintiffs' only federal claim arises under the Magnuson-Moss Warranty Act (Class Action Complaint ¶¶ 107-18, ECF No. 1 (N.D. Ill.) ("Compl.")), which bars federal-question jurisdiction in class actions with fewer than 100 named plaintiffs. *See Ware v. Best Buy Stores, LP*, 6 F.4th 726, 731 (7th Cir. 2021) (quoting 15 U.S.C. § 2310(d)(3)). This case involves only two named plaintiffs. *See* Compl. ¶¶ 14-23.

2

damages from Mercedes for the value of new hardware, data plans, subscription fees, and vehicle devaluation. *Id.* ¶¶ 13 & 42, 45. And CAFA's requirement of minimal diversity is met:

- Rose is a citizen of Illinois;

- Gian is a citizen of New York;

- MBUSA is a Delaware limited liability company with its principal place of business in Sandy Springs, Georgia;

- MBUSA's sole member, Mercedes-Benz North America Corporation, is a Delaware corporation with its principal place of business in Farmington Hills, Michigan;[2] and

- Mercedes-Benz Group AG ("MBG"), formerly Daimler AG, is a German *Aktiengesellschaft* (publicly held stock company) with its principal place of business in Stuttgart, Germany.

*See* Pls.' Suppl. Statement of Jurisdiction 2-3, ECF No. 9; Pls.' Am. Jurisdictional Statement 2, ECF No. 16.

**Appellate jurisdiction.** This Court has appellate jurisdiction over all final decisions of district courts under 28 U.S.C. § 1291, and specifically over "a final decision with respect to an arbitration" pursuant to 9 U.S.C. § 16(a)(3). A decision compelling arbitration and dismissing the case without prejudice is a "final

---

[2] Although the district court would have had CAFA jurisdiction even if MBUSA were treated as a citizen of Michigan, as noted above, for purposes of CAFA, the citizenship of an LLC's members is not relevant to diversity. *Netflix*, 83 F.4th at 1071.

decision" within the meaning of § 16(a)(3). *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 678 (7th Cir. 2002).[3]

The district court granted Mercedes' motion to compel arbitration and dismissed the case without prejudice on December 11, 2023. App. 50. Plaintiffs filed a timely notice of appeal on January 10, 2024. *See* Pls.' Notice of Appeal, ECF No. 35 (N.D. Ill.); Fed. R. App. P. 4(a)(1)(A) (30-day requirement).

## STATEMENT ON ORAL ARGUMENT

The facts and legal arguments are adequately presented in the briefs and the record. *See* 7th Cir. R. 34(f); Fed. R. App. P. 34(a)(1)(C). But if oral argument would aid this Court in its review, Mercedes is happy to oblige.

## STATEMENT OF THE ISSUE

Did the district court correctly find that plaintiffs could not negate assent to arbitration by saying they could not recall seeing the mbrace Terms of Service agreement and its arbitration clause, given the undisputed facts in this case?

## STATEMENT OF THE CASE

**A.    Plaintiffs activated mbrace with notice of the Terms of Service.**

mbrace is a telematics service offered on a subscription basis in certain Mercedes-Benz vehicles that includes navigation, safety, and other features. App. 2

---

[3] The Supreme Court recently granted certiorari to decide whether the Federal Arbitration Act "requires district courts to stay a lawsuit pending arbitration, or whether district courts have discretion to dismiss when all claims are subject to arbitration." *See Smith v. Spizzirri*, 144 S. Ct. 680 (2024) (mem.); Pet. for Writ of Cert. at I, *id.* (No. 22-1218). The statutory language at issue orders district courts to issue a stay "on application of one of the parties," 9 U.S.C. § 3. Here, Mercedes requested dismissal in their motion to compel arbitration. ECF No. 24 (N.D. Ill.). Plaintiffs did not request a stay. *See* Pls.' Resp. in Opp'n, ECF No. 26 (N.D. Ill.).

¶¶ 3 & 4, 7, 18. When plaintiffs bought their vehicles, they "knew from [their] research" that the models were compatible with mbrace, which they claim was important to them. Compl. ¶¶ 15, 20; App. 7, 18. Gian activated mbrace two days after buying her vehicle. App. 4 ¶ 17, 37, 39. Rose activated mbrace on the day of purchase. *Id.* at 4 ¶ 13, 35.

Before activating and using mbrace, plaintiffs—like all mbrace subscribers—were put on notice that the TOS governed their use of mbrace. *Id.* at 2 ¶ 4, 4 ¶¶ 14, 18. Plaintiffs received copies of the TOS in connection with their initial mbrace subscriptions. *Id.* at 4 ¶ 16, 5 ¶ 20. They also received a Welcome Kit reminding them that mbrace was subject to the TOS and a Welcome Email with a direct link to the TOS. *Id.* at 2 ¶ 7. And plaintiffs received notice and copies of the TOS *again* when they continued or renewed their subscriptions. *Id.* at 4 ¶ 16, 5 ¶ 20.

Neither plaintiff has denied they were provided with or informed of the TOS before activating, using, and renewing their subscription to mbrace. Rather, plaintiffs claim only that they do not *recall* the TOS. Rose Decl. ¶¶ 5-6, ECF No. 26-2 (N.D. Ill.); Gian Decl. ¶ 4, ECF No. 26-1 (N.D. Ill.). But subscribers, including plaintiffs, can activate mbrace in only one of two ways: (1) by enrolling at an auto dealership or (2) by contacting the mbrace call center. App. 2 ¶ 4. Under either option, they receive notice of the TOS. At an auto dealership, the subscriber must accept the TOS by clicking the "I accept" button on an iPad or computer. *Id.* at 2 ¶ 5. The button is "adjacent to" the TOS. *Id.* at 18 (in capital letters). If the subscriber

activates mbrace via the call center, a customer service representative informs the subscriber about the TOS and where to access it. *Id.* at 2 ¶ 5.

Regardless of which method they use, following activation, mbrace subscribers also receive a Welcome Kit reminding them that the service is subject to the TOS. *Id.* at 2 ¶ 7. And they receive a Welcome Email with a direct link to the TOS. *Id.* Later, they receive renewal reminders referencing or linking to the TOS. *Id.* Subscribers accept the TOS again whenever they continue or renew their mbrace subscriptions. *See id*. at 4 ¶ 16, 5 ¶ 20. Moreover, the TOS is always available on the MBUSA website or by calling a toll-free number. *Id.* at 2 ¶ 7.

While the TOS has changed slightly since plaintiffs' initial subscriptions, the key contractual provisions have not substantively changed. *Id.* at 3-4 ¶ 12. First, the TOS has always provided that using mbrace constitutes acceptance of the TOS. *Id.* at 7 ("YOU WILL HAVE AGREED TO THESE TERMS OF SERVICE BY . . . USING . . . YOUR VEHICLE AND MBRACE SERVICE OR ACCEPTING ANY OF ITS BENEFITS."), 18 (same but limited to trial periods). Second, the TOS has always contained an arbitration provision, labeled "Dispute Resolution," which provides that "any controversy or claim arising out of or relating to these terms of service" will be subject to arbitration. *Id.* at 13-14 § 13, 29-30 § 13 (all language in capital letters). The arbitration provision also contains an explicit and conspicuous class waiver. *Id.*

**B.** **Plaintiffs renewed and used mbrace for over seven years.**

After activating mbrace, plaintiffs each used the service for over seven years. *See* App. 35, 37, 39. Rose used mbrace "often throughout the life of [his] vehicle." Compl. ¶ 16. Gian also used mbrace "multiple times." *Id.* ¶ 21.

After Rose's five-year trial period ended, he reactivated the service on January 5, 2022. App. 4 ¶ 15, 35. He received a copy of the TOS with his complimentary service and again upon reactivation. *Id.* at 2 ¶ 7, 4 ¶ 16.

Gian received six months of complimentary service and then began a paid monthly subscription. *Id.* at 4 ¶ 19. She received a copy of the TOS with her complimentary service and again with her paid mbrace subscription. *Id.* at 2 ¶ 7, 5 ¶ 20. She had continuous mbrace service until she canceled, effective November 19, 2022. *Id.* at 4-5 ¶ 19.

**C.** **Plaintiffs sue Mercedes and refuse to arbitrate.**

Plaintiffs filed this putative class action in November 2022, alleging that Mercedes deprived them of the "benefit of their bargain" when mbrace became inoperable because 3G wireless networks operated by other entities were decommissioned, as plaintiffs now must "choose whether to forego [mbrace services] or pay out-of-pocket for an alternative." Compl. ¶¶ 12, 67. Mercedes moved to compel arbitration and dismiss the case, arguing that (1) the parties have a valid and enforceable arbitration agreement, (2) the agreement covers this dispute, and (3) MBUSA and MBG are express third-party beneficiaries to the agreement. Defs.' Mem. in Supp. of Mot. to Compel Arb. 5-9, ECF No. 25 (N.D. Ill.). The district court granted the motion, holding that plaintiffs accepted the terms of the TOS, including

the arbitration provision. App. 47, 49, 50. Plaintiffs filed a notice of appeal on

January 10, 2024. ECF No. 35 (N.D. Ill.).

## SUMMARY OF THE ARGUMENT

The district court correctly found that plaintiffs accepted the mbrace TOS,

including the arbitration provision. Under Illinois law, a party accepts terms via

"outward expressions" of assent (amongst other methods). And if a contract provides

*use* as a means of acceptance, a party who is on notice of the terms—whether actual

or inquiry notice—accepts terms by using the service, regardless of whether they

recall doing so and regardless of whether they actually read the terms.

Unrebutted evidence shows that plaintiffs were on notice that mbrace was

subject to the TOS before they activated, reactivated, and/or used the service.

Plaintiffs received multiple copies of the TOS and could access it online or by phone

at any time. And the TOS expressly provides that using mbrace constitutes

acceptance of its terms. Plaintiffs proceeded with activation, renewals, and use of

mbrace for over seven years. Nothing in the record suggests that plaintiffs did

anything to reject the TOS when activating, renewing, or using mbrace—all

outward, objective signs were that they assented.

Before the district court, plaintiffs did *not* deny receiving notice of the TOS or

activating the service—instead asserting only that they did not specifically "recall"

doing so. But the district court correctly found that a failure to recall does not create

a genuine issue of fact on contract acceptance. Plaintiffs are bound to the terms they

agreed to and cannot avoid arbitration.

Plaintiffs claim that mbrace is "important" to them and that they should not have to "forego" the service, but using mbrace is *expressly* conditioned on their acceptance of the TOS—including the arbitration clause. Plaintiffs cannot pick and choose, taking the benefits of the TOS with only some of its burdens. Plaintiffs activated, renewed, and used mbrace for over seven years, on notice from the start that the service was subject to the TOS. The district court thus correctly held that they accepted the TOS, including the arbitration provision.

## STANDARD OF REVIEW

On appeal from a district court's decision to compel arbitration, the Seventh Circuit reviews "findings of fact for clear error and rulings on questions of law de novo." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Mixed questions of law and fact that "immerse courts in case-specific factual issues" are reviewed deferentially for clear error. *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020); *see also, e.g.*, *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 588 (7th Cir. 1992) ("In this circuit, the application of a legal standard to undisputed facts is classified as a fact for purposes of delimiting the respective spheres of the trial and appellate courts. . . . [T]he appellate standard is clear error." (cleaned up)).

Mutual assent is a question of fact. *Kass*, 75 F.4th at 701 (quoting *Arbogast v. Chi. Cubs Baseball Club, LLC*, 194 N.E.3d 534, 542 (Ill. App. Ct. 2021)); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016). The parties agree that

assent in this case turns on "factual evidence." *See* Pls.' Br. 8; *id.* at 11 ("[A]ssent is 'a fact-intensive inquiry.'" (quoting *Sgouros*, 817 F.3d at 1034-35)).

## ARGUMENT

The Federal Arbitration Act ("FAA") required the district court to enforce the parties' arbitration agreement. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4). The FAA reflects an "emphatic federal policy" in favor of arbitration. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam). District courts thus must compel arbitration if the movant shows (1) an agreement to arbitrate, (2) a dispute within the scope of that agreement, and (3) the opposing party's refusal to arbitrate. *Kass*, 75 F.4th at 700.

Mercedes made all three showings before the district court. On appeal, plaintiffs challenge only the first element—whether there was an agreement to arbitrate.[4]

The district court properly found that there was no genuine dispute that plaintiffs agreed to the TOS. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (nonmoving party must show a "genuine issue of material fact"); *Kass*, 75 F.4th at 700. Ordinary state-law principles determine whether an arbitration

---

[4] Below, plaintiffs contested that (1) this dispute falls within the scope of the arbitration agreement and (2) MBUSA and MBG are third-party beneficiaries that can enforce the arbitration agreement. *See* App. 47-48 (summarizing the parties' arguments). The district court sided with Mercedes. *Id.* Plaintiffs' opening brief does not challenge the district court's findings on these issues, so they have waived any challenge. *See Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023) (appellant waives argument "by failing to raise it at all in the [appellant's] opening brief on appeal"). Mercedes thus will not further address these issues in this brief.

agreement exists. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710-11 (7th Cir. 2019). In Illinois, a party can manifest assent to contractual terms through "outward expressions," such as actions or words, that would communicate assent to a reasonable person. *Id.* at 711. Conduct manifests assent if the circumstances of the transaction provide reasonable notice that (1) the terms are being offered and (2) the party's conduct will convey acceptance of those terms.[5] *Arbogast*, 194 N.E.3d at 544. Both are true here. The district court thus correctly found—and certainly did not clearly err in finding—that the unrebutted evidence shows plaintiffs had reasonable notice of the TOS and assented to its terms.

## I.    Plaintiffs had reasonable notice of the Terms of Service when they activated, paid for, used, and renewed mbrace.

As plaintiffs concede, to assent to a contract, a party need only be put on inquiry notice of the contract's terms. Pls.' Br. 10 n.2. The party need not have actually read the terms, nor even have had subjective knowledge of them—rather, it is enough that the terms were "identified" to the party as being part of a contract. *See James v. McDonald's Corp.*, 417 F.3d 672, 675, 678 (7th Cir. 2005) (plaintiff manifested assent by participating in a promotional game when the plaintiff's game piece came in a container directing participants to consult the rules for more details); *Treiber & Straub, Inc. v. UPS, Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) (actual knowledge of specific terms not required to show assent); *Hill v. Gateway*

---

[5] *See also Sgouros*, 817 F.3d at 1033-34; *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 7-8 (1st Cir. 2021); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023); *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012).

*2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (listing means by which a consumer on notice could discover the terms: ask the company, access the company's website, or review the terms upon receipt).[6] This follows from the "basic contract law" that a party cannot agree to a contract and then "renege based on [their] own failure to read it." *Treiber*, 474 F.3d at 385. Any other approach would create a perverse incentive for parties to ignore the terms or "come up with hard-to-refute tales of not reading or understanding the documents they sign." *Novitsky v. Am. Consulting Eng'g, LLC*, 196 F.3d 699, 702 (7th Cir. 1999).

The record supported the district court's finding that plaintiffs were at least on inquiry notice of the TOS. *See* App. 47. Plaintiffs acknowledge activating mbrace around the same time they bought their vehicles, and MBUSA's records show the same. *See* Gian Decl. ¶ 5, ECF No. 26-2 (N.D. Ill.); Rose Decl. ¶ 5, ECF No. 26-1 (N.D. Ill.); App. 4 ¶¶ 13 & 17, 35, 39. Mercedes proffered unrebutted evidence that plaintiffs could have activated mbrace in only one of two ways: either by enrolling at the dealership or by speaking with a representative from the mbrace call center. App. 2 ¶ 4. In either scenario, plaintiffs would have been advised of the TOS. If plaintiffs activated the service at a dealership, they had to first accept the TOS by

---

[6] *See also, e.g.*, *Schafer v. AT&T Wireless Servs., Inc.*, 2005 WL 850459, at *5 (N.D. Ill. Apr. 1, 2005) ("Here, plaintiff was put on notice of, and had the opportunity to obtain, the additional Terms and Conditions."); *Auyeung v. Toyota Motor Sales, USA, Inc.*, 2019 WL 3385189, at *5 (N.D. Ill. July 1, 2019) (rejecting consumer's argument that he had no meaningful opportunity to reject terms when he could have read the agreement by searching the Toyota website before purchasing a Toyota vehicle); *Taylor v. Samsung Elecs. Am.*, 2018 WL 3921145, at *4 (N.D. Ill. Aug. 16, 2018) ("A [company's] posting of its terms and conditions on its website provides users of its products a reasonable opportunity to read them.").

clicking "I accept" on an iPad or computer. *Id.* at 2 ¶ 5. And if they activated over the phone, a representative informed them of the TOS, including where to access and review it. *Id.* That evidence alone was sufficient to support the district court's finding of reasonable notice.

But if that were not enough (and it was), Mercedes also presented uncontroverted evidence that, after activation, plaintiffs received a Welcome Kit reminding them that mbrace was subject to the TOS, as well as a Welcome Email with a direct link to the TOS. *Id.* at 2 ¶ 7. Plaintiffs could review the TOS online or over the phone at any time. *Id.* And plaintiffs received notice and copies of the TOS *again* when they continued or renewed their subscriptions—Rose when he reactivated his subscription following a five-year complimentary service period, and Gian when she began paying the monthly fee for mbrace following a six-month complimentary period. *Id.* at 4 ¶ 16, 5 ¶ 20. In short, plaintiffs were *repeatedly* informed of and provided access to the TOS yet continued to use and pay for mbrace.[7] That is more than enough to show that they were on notice of the TOS— actual notice, but *certainly* inquiry notice.

---

[7] Even if they ignored the emails and other express disclosures they received, the mere fact that both plaintiffs subscribed to and paid for mbrace should have alerted them to the presence of governing terms—just as it is "axiomatic that a contest normally has rules regarding eligibility to win the promised prize" (*James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005)), modern subscription services, as consumers well know, are normally governed by contractual terms.

II. **Mercedes reasonably understood plaintiffs' activations, renewals, and use of mbrace over seven years as manifestation of assent to the Terms of Service.**

This Court consistently has held for nearly 30 years that use of a product or service manifests assent to the terms governing that use. *See, e.g.*, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) ("To use the [plane] ticket is to accept the terms, even terms that in retrospect are disadvantageous."); *accord Stockman v. Midland Credit Mgmt., Inc.*, 2022 WL 1499811, at *4-5 (N.D. Ill. May 12, 2022) (plaintiff was bound to arbitration provision of a credit card agreement even though she did not sign the agreement because she used the credit card subject to the agreement). A consumer who (a) with reasonable notice that a service is subject to certain terms (b) authorizes the service, (c) receives the terms, and (d) decides to use the service manifests assent to those terms. *See, e.g.*, *ProCD*, 86 F.3d at 1452 (use manifested assent when "ProCD proposed a contract that a buyer would accept by *using* the software after having an opportunity to read the license at leisure" (emphasis in original)); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (finding continued use of service after receipt of terms manifested assent to the terms); *Schafer v. AT&T Wireless Servs., Inc.*, 2005 WL 850459, at *5 (N.D. Ill. Apr. 1, 2005) (activating phone and using service manifested assent to terms); *see also Gupta*, 934 F.3d at 712, 714 (receipt of an agreement and "performance consistent with the agreement's terms" meets the objective standard for mutual assent). Similarly, ordinary contract principles confirm that taking the benefit of a contract—such as by receiving and using the mbrace service— constitutes manifestation of assent to governing terms. *See Treiber & Straub, Inc. v.*

*UPS, Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)).

Plaintiffs' conduct here manifested assent—each used the mbrace service for over *seven years*. *See* App. 35, 37, 39. After activating the service and receiving notice of the TOS, multiple copies of the TOS, the Welcome Kit, the Welcome Email, and repeated renewal notifications referencing or linking to the TOS, Gian *paid* for a monthly mbrace subscription after a six-month trial and Rose *reactivated* mbrace after five years of service. *Id.* at 2 ¶ 7, 4 ¶¶ 15 & 16, 4-5 ¶¶ 19 & 20. Plaintiffs could have canceled mbrace at any time—but chose not to. *See id.* at 4-5 ¶ 19, 12, 27, 35.

Plaintiffs had reason to know Mercedes would understand from their ongoing use of mbrace, including their payments to subscribe to the service, that they accepted the TOS. And it was reasonable for Mercedes to understand the same. The TOS was not some "unsolicited offer-by-email from a stranger" (*Gupta*, 934 F.3d at 714) that no one would respond to. Rather, the TOS was identified for plaintiffs multiple times—before activation, before continued use, and before both plaintiffs affirmatively signed up and *paid monthly for* the mbrace service. Mercedes, like any reasonable person would, understood plaintiffs' "outward expressions"—their repeated decisions to knowingly take the benefit of the TOS—as manifestations of their assent.

## III. Plaintiffs' attacks on Mercedes' evidence are baseless.

Plaintiffs' assertion that the Grycz declaration "remains devoid of the necessary facts required to establish assent" is wrong. *See* Pls.' Br. 14.

First, plaintiffs' repeated characterizations of the Grycz declaration as "conclusory" (*id.* at 6, 12, 14, 20) are baseless. Grycz laid out how the TOS is provided to mbrace subscribers, provided specific details about the multiple times both plaintiffs received the TOS and/or notice that it governed their use of mbrace, and described the process by which mbrace subscribers, including plaintiffs, assented to the TOS. *See* App. 2 ¶¶ 4-7, 4-5 ¶¶ 13-20. To the extent plaintiffs are complaining that Grycz did not identify the specific communications emailed to them, that complaint is meritless—it is beyond cavil that declarations by corporate representatives can establish a company's usual practice of communicating contract terms, including an arbitration clause. *See Kass v. PayPal Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (although the movant did not provide the specific email provided to the plaintiff, corporate representatives' declarations regarding a corporate practice "provide[d] the needed evidence" (citing *Tabor & Co. v. Gorenz*, 356 N.E.2d 1150, 1154 (Ill. App. Ct. 1976) (rejecting the contention "that it is insufficient to merely prove an office custom of mailing without direct proof that the procedure was followed in the particular instance"))). Evidence of a company's policies and regular practice, when—as in this case—plaintiffs offer no evidence to the contrary, is sufficient to show that practice was followed. *See id.*; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (recognizing director and manager's "uncontroverted affidavits" as proof that an arbitration brochure was "definitely sent and presumably received"); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (recognizing employee's declaration as proof that letter was addressed and mailed).

Second, plaintiffs' myopic focus on the Grycz declaration itself ignores the additional evidence attached to the declaration. *See* App. 6-39. That includes the TOS, both plaintiffs' vehicle records, and a separate list of Gian's mbrace subscriptions. *See id.* These documents establish the dates on which both plaintiffs activated the mbrace service (and necessarily agreed to the TOS per Grycz's uncontroverted testimony) and describe plaintiffs' multiple mbrace subscriptions, including the dates and contract numbers associated with each. *See id.* at 35, 37, 39.

Plaintiffs' reliance on *Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447 (N.D. Ill. 2021), and *Gilbert v. I.C. Sys., Inc.*, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021), is also unjustified. Plaintiffs incorrectly claim *Melvin* stands for the proposition that proof of notice and assent are "impossible" without "visuals," "screenshots," and related details. Pls.' Br. 12-13. And they argue that *Gilbert* required Mercedes to put forth detailed evidence of exactly "how" and "when" each plaintiff agreed to the TOS. *Id.* at 6, 13-14. Those cases simply do not stand for the propositions plaintiffs cite them for.

*Melvin* was a clickwrap case, in which the evidence showed that the link to the "Terms and Conditions" on the defendant's website did *not* "contain the arbitration agreement defendant assert[ed]." 553 F. Supp. 3d at 451. Rather, the arbitration agreement was available only by clicking on another hyperlink (among several other hyperlinks) hidden at the bottom of the terms and conditions, and there was "nothing" that signaled to the user "that the content of these items include[d] provisions to which he or she agree[d] to be bound." *Id*. The plaintiff also

17

presented independent evidence—links to the websites at issue—that rebutted the defendant's assertion that its webpage required agreement to the relevant terms. *Id.*

      This case is not at all like *Melvin*. First, this is not a typical clickwrap case—when plaintiffs activated mbrace, they were either in an auto dealership speaking with a dealer representative, or else speaking with someone on the phone about subscribing to a service (*see* App. 2 ¶ 4)—hardly environments in which they were likely to be confused that they were entering into a contract. And unlike *Melvin*, it is uncontested here that the TOS included conspicuous disclosure of the arbitration agreement, as well as an express statement that continued use of mbrace constituted acceptance of the TOS. *See id.* at 13-14 § 13, 29-30 § 13. Most notably, unlike in *Melvin*, plaintiffs here offered *nothing* rebutting Mercedes' evidence—only self-serving assertions that they do not *recall* receiving the TOS. *See* Rose Decl. ¶¶ 5-6, ECF No. 26-2 (N.D. Ill.); Gian Decl. ¶ 4, ECF No. 26-1 (N.D. Ill.).

      *Gilbert*—an unpublished and nonprecedential case—is even more inapt. There, the defendant was a collection agency attempting to collect a debt on behalf of a third-party cell-phone provider, Sprint. 2021 WL 292852 at *1. The defendant sought to compel arbitration based on an alleged agreement between the plaintiff and Sprint formed when the plaintiff activated his cell-phone service, contending the defendant could enforce the agreement as an assignee of Sprint. *Id.* at *2-3. But the defendant collection agency had no knowledge—and thus its declaration did not include "any facts"—showing that the plaintiff "was made aware of the Terms and

Conditions at any point, that he ever saw the Terms and Conditions, or that he had the chance to review the Terms and Conditions." *See id.* at \*6-7. Nor could it provide "any other information about the actions, if any, [the plaintiff] took with respect to the Terms and Conditions." *Id.* at \*7. Here, in contrast, the Grycz declaration described (based on Grycz's own knowledge and experience) the activation process, including notification of the TOS, and the several other times thereafter in which the TOS was communicated. App. 1 ¶ 1, 2 ¶¶ 4-5, 7. It specifically stated that plaintiffs were provided with copies of the TOS.[8] *Id.* at 4 ¶ 16, 5 ¶ 20. And it described, in detail and with supporting documentation, plaintiffs' multiple subscriptions to and years-long use of the mbrace service. *See id.* at 4-5 ¶¶ 13-20, 35, 37, 39. This evidence is nothing like that in *Gilbert*—and it is more than enough to support the district court's finding.

## IV.    Plaintiffs' declarations do not show any genuine issue of fact as to notice of, or assent to, the Terms of Service.

Neither plaintiff's declaration could create a genuine dispute of the basic facts here—plaintiffs assented to the TOS through their continued use of mbrace while on notice that such use constituted agreement.

---

[8] Plaintiffs argue that there is no support for Grycz's assertion that plaintiffs received "copies of the TOS." Pls.' Br. 20. But Grycz declared that, in addition to being informed of the TOS and how to access it during the activation process, subscribers receive a "Welcome Email containing a link to the TOS" and the TOS is "link[ed] to" in "subsequent communications with subscribers, including renewal reminders." App. 2 ¶¶ 5, 7. If plaintiffs are attempting to draw a distinction between receiving a physical copy of the TOS and receiving a link to a digital copy, that distinction is not relevant under the law.

To avoid arbitration, the nonmoving party must show "a genuine issue of material fact." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). They cannot "generally deny[]" facts, and instead must point to "specific evidence in the record," as at summary judgment. *Id.* A claimed lack of recall is *not* sufficient. *Id.* at 735-36; *see Kass v. PayPal Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (noting importance of the distinction between testimony that a plaintiff "did not remember receiving" terms and testimony that the plaintiff "did not receive" them); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (noting that plaintiff failed to present "any conflicting evidence" as to receipt of contract terms by claiming he did not *remember* receiving the terms).

Plaintiffs falsely claim that Gian declared that she "did not activate the mbrace service at the dealership or call the call center." Pls.' Br. 21 (citing Gian Decl., ECF No. 26-1 (N.D. Ill.)). That simply is not what Gian declared—instead, she said she did "not *recall* initially activating or subscribing to the mbrace service through a separate process on an iPad or computer at the dealership . . . or calling the mbrace Call Center to activate the mbrace service anytime thereafter." Gian Decl. ¶ 4 (emphasis added). Again, a lack of recall does not create a genuine issue of fact. And while Gian declared that to the "best of [her] recollection and knowledge, the mbrace service . . . had already been activated when [she] took delivery" (*id.* ¶ 5), that is fully consistent with either (1) activating mbrace at the dealership or (2) activating mbrace via the call center—neither of which required her to have taken delivery prior to activation.

20

Moreover, even if there were some genuine question whether Gian somehow evaded the process for activating mbrace—and there is not—her declaration did not contest that she was subsequently put on notice of the TOS via the Welcome Email, renewal reminders, and her later renewal of the mbrace service. Nor did Gian's declaration deny that she continued to use the service after receiving such notice. As discussed above, that also is sufficient basis to affirm the district court.

Rose's declaration is similar. Rose did not deny that he was informed of the TOS when he activated mbrace, but stated only that he did "not recall anyone" telling him about the TOS. *See* Rose Decl. ¶ 5, ECF No. 26-2 (N.D. Ill.). Nor did he deny receiving the Welcome Email or later emails with links to the TOS, but stated only that he did "not recall being presented with" the TOS. *See id.* ¶ 6.

Taken together, plaintiffs' declarations show only that they did not "recall" being told about the TOS before activating mbrace. *See* Gian Decl. ¶ 4; Rose Decl. ¶ 5. Plaintiffs did not say, for example, that they did not have notice that use of mbrace constituted acceptance of governing terms, or that they did not receive notice of the TOS after activating mbrace. Neither did they suggest that they would not have agreed to the TOS had they known about the arbitration provision. And in any event, there simply is no genuine issue of fact based on plaintiffs' failure to recall events that occurred years ago. *See, e.g.*, *United States v. Romero*, 2017 WL 61025, at *3 (N.D. Ill. Jan. 5, 2017) ("A lack of recollection by itself, however, is not sufficient to create a genuine issue of material fact."). Plaintiffs are bound to the terms that they repeatedly manifested assent to. The district court did not err.

21

# CONCLUSION

For the reasons stated above, Mercedes asks the Court to affirm the district court's order granting its motion to compel arbitration and dismissing the case.

Dated: April 10, 2024                    Respectfully submitted,

<div style="margin-left: 45%;">

/s/ *Troy M. Yoshino*
Troy M. Yoshino
   *Counsel of Record*
Winston & Strawn LLP
101 California Street
35th Floor
San Francisco, CA 94111
(415) 591-1000
tyoshino@winston.com

Jeff Wilkerson
Winston & Strawn LLP
300 South Tryon Street
16th Floor
Charlotte, NC 28202
(704) 350-7700
jwilkerson@winston.com

Sarah A. Krajewski
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
skrajewski@winston.com

*Counsel for Appellees*
*Mercedes-Benz Group AG and*
*Mercedes-Benz USA, LLC*

</div>

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the 14,000-word limit of 7th Cir. R. 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,024 words.

2.      This document complies with the typeface requirements of 7th Cir. R. 32(b) and Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12-point Century Schoolbook font.


Dated: April 10, 2024                          /s/ *Troy M. Yoshino*

                                               *Counsel for Appellees*
                                               *Mercedes-Benz Group AG and*
                                               *Mercedes-Benz USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, I electronically filed the foregoing Appellees' Response Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 10, 2024                     /s/ *Troy M. Yoshino*

*Counsel for Appellees*
*Mercedes-Benz Group AG and*
*Mercedes-Benz USA, LLC*