No. 24-1042

# In the
# United States Court Of Appeals
# For The Seventh Circuit

JIM ROSE and ANITA GIAN,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants*,

v.

MERCEDES-BENZ USA, LLC, et al.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:22-cv-06099
The Honorable Mary M. Rowland, District Judge Presiding

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS
## JIM ROSE and ANITA GIAN

DAVID C. WRIGHT
STEVEN A. HASKINS
MARK I. RICHARDS
McCUNE LAW GROUP,
McCUNE WRIGHT AREVALO VERCOSKI
KUSEL WECK BRANDT APC
3281 East Guasti Road, Suite 100
Ontario, California 91761
(909) 557-1250
Counsel for Plaintiffs-Appellants Jim Rose
and Anita Gian

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 2

I.    Mercedes Did Not Satisfy Its Evidentiary Burden to Show an Enforceable
      Arbitration Agreement ............................................................................. 2

   A.   Mercedes Did Not Offer Sufficient Evidence Demonstrating that Appellants
        Had Inquiry Notice that mbrace Was Subject to a TOS Agreement .................. 2

   B.   Mercedes' Subjective Understanding that Appellants' Conduct Manifested
        Assent to the TOS Agreement Is Irrelevant Because Assent Is an Objective
        Standard ............................................................................................ 8

   C.   Mercedes Did Not Establish a Policy or Practice of Sending Communications
        About the TOS Agreement to mbrace Subscribers ...................................... 11

CONCLUSION .............................................................................................. 18

CERTIFICATE OF COMPLIANCE ..................................................................... 20

CERTIFICATE OF SERVICE ............................................................................ 21

i

# TABLE OF AUTHORITIES

*Page(s)*

Cases

*Arbogast v. Chi. Cubs Baseball Club, LLC,*
194 N.E.3d 534 (Ill.App.Ct. 2021) ........................................................................ 8

*Auyeung v. Toyota Motor Sales, U.S.A., USA, Inc.,*
No. 19 C 278, 2019 WL 3385189 (N.D.Ill. July 1, 2019) ..................................... 5

*Boomer v. AT & T Corp.,*
309 F.3d 404 (7th Cir. 2002) ...................................................................... 9, 10, 14

*Carter v. SSC Odin Operating Co.,*
976 N.E.2d 344 (Ill. 2012) ................................................................................... 15

*Fuentes v. Jiffy Lube Int'l, Inc.,*
No. CV 18-5174, 2023 WL 5984284 (E.D.Pa. Sept. 14, 2023) .......................... 17

*Gilbert v. I.C. System, Inc.,*
No. 19-CV-04988, 2021 WL 292852 (N.D.Ill. Jan. 28, 2021) ................. 16, 17, 18

*Godfrey v. U.S.,*
997 F.2d 335 (7th Cir. 1993) ............................................................................... 15

*Hill v. Gateway 2000, Inc.,*
105 F.3d 1147 (7th Cir. 1997) ............................................................................ 3, 7

*James v. McDonald's Corp.,*
417 F.3d 672 (7th Cir. 2005) ........................................................................ 3, 6, 8

*Kass v. Paypal Inc.,*
75 F.4th 693 (7th Cir. 2023) ........................................................................... 11, 14

*Melvin v. Big Data Arts, LLC,*
553 F.Supp.3d 447 (N.D.Ill. 2021) ..................................................................... 15

# TABLE OF AUTHORITIES (CONT.)

*Page(s)*

*Novitsky v. Am. Consulting Eng'rs, L.L.C.,*
    196 F.3d 699 (7th Cir. 1999) ................................................................. 4

*Schafer v. AT & T Wireless Servs., Inc.,*
    No. CIV. 04-4149-JLF, 2005 WL 850459 (S.D.Ill. Apr. 1, 2005)..................................... 3, 5

*Specht v. Netscape Commc'ns Corp.,*
    306 F.3d 17 (2d Cir. 2002) ................................................................. 9

*Tabor Co. v. Gorenz,*
    356 N.E.2d 1150 (Ill.App.Ct. 1976) .............................................. 13, 14

*Taylor v. Samsung Elecs. Am.,*
    No. 16 C 50313, 2018 WL 3921145 (N.D.Ill. Aug. 16, 2018).......................................... 3, 6

*Tinder v. Pinkerton Security,*
    305 F.3d 728 (7th Cir. 2002) ................................................... 11,12, 14

*Treiber & Straub, Inc. v. U.P.S., Inc.,*
    474 F.3d 379 (7th Cir. 2007) ................................................................. 3, 5

*Van Tassel v. United Mktg. Grp., LLC,*
    795 F.Supp.2d 770 (N.D.Ill. 2011) ..................................................... 16

*Wilson v. Redbox Automated Retail, LLC,*
    448 F.Supp.3d 873 (N.D.Ill. 2020) ................................................ 7, 16

Rules

Fed. R. App. P. 32 ................................................................................ 20

## INTRODUCTION

Mercedes' response brief vacillates around the fundamental flaw in its argument: its failure to factually demonstrate that Appellants assented to the TOS Agreement. Indeed, Mercedes consistently expresses surprise that the law might require any evidentiary showing on its part at all. According to Mercedes, the Court should simply accept its word that notice was appropriately given, even as it couches what little evidence it presents in vague generalities and hypotheticals. But Mercedes' conclusory statements are no substitute for the evidence necessary to establish contractual assent, the foundation of any agreement to arbitrate.

The law required Mercedes to present actual evidence that it provided sufficient notice of the TOS Agreement to conclude that a meeting of the minds had been reached. The evidence necessary to satisfy the requirement may change because the circumstances of any single transaction will change. But Mercedes' evasion of that requirement fails to address the laws requirements. Therefore, the Court should reverse the district court's order granting the motion to compel arbitration and remand for further proceedings.

**ARGUMENT**

**I.    Mercedes Did Not Satisfy Its Evidentiary Burden to Show an Enforceable Arbitration Agreement**

Mercedes' arguments for affirming the district court's order rest on several flawed grounds. First, it fails to explain how its procedures conferred inquiry notice that the mbrace service was subject to the TOS Agreement. Second, Mercedes' subjective understanding that Appellants manifested assent by continuously using mbrace for a prolonged period is immaterial. Conduct cannot manifest assent unless Appellants were given notice about the consequences of their actions, the legal point Mercedes fails to address. Third, Mercedes' reliance on its policies and practices for sending the TOS Agreement (or notice of it) to mbrace subscribers is inadequate because it fails to identify those policies or practices. And fourth, its attack on the cases Appellants rely upon is unconvincing because they are not as distinguishable as Mercedes suggests.

**A.    Mercedes Did Not Offer Sufficient Evidence Demonstrating that Appellants Had Inquiry Notice that mbrace Was Subject to a TOS Agreement**

The parties agree that assent requires at least inquiry notice of the terms governing the product in question. S*ee* Appellees' Resp. Br. 11-12; Appellants' Br. 10 n.2. But Mercedes is mistaken when it argues that it satisfied that requirement here. *See* Appellees' Resp. Br. 12.

Mercedes relies on several distinguishable cases to argue that a document need only be "identified" to manifest assent. *Id.* at 11-12 & n.6. In one of these cases, *James v.*

*McDonald's Corp.*, the court held that McDonald's had conferred notice of its contest game rules upon the plaintiff because, among other things, "the french fry carton [she purchased and] to which [her game piece was] affixed had language directing participants to see the Official Rules for details." 417 F.3d 672, 675-78 (7th Cir. 2005). The court prefaced its holding by emphasizing that the controversy took place in the "promotional-contest context," where contestants, like the plaintiff, were expected to know that certain rules would govern one's eligibility to win.[1] *Id.* at 678.

In another case, *Treiber & Straub, Inc. v. U.P.S., Inc.*, the court held that UPS had conferred notice upon the plaintiff because its website required first-time shippers to twice "agree to the items described under the heading 'My UPS Terms and Conditions.'" 474 F.3d 379, 382, 384-85 (7th Cir. 2007). UPS provided extensive evidence of its shipping process for website users, describing that shippers must click a box on the screen to agree to its terms and that the "My UPS Terms and Conditions" heading directed them to a separate "Terms and Conditions of Service" document, which included the liability disclaimer at issue. *Id.* at 382.

---

[1] Outside the promotional-contest context, Mercedes cites other cases holding that inquiry notice is conferred where the defendant affixes on and/or includes a leaflet with a purchased product, which references or lists the terms the product is governed by. *See* Appellees' Resp. Br. 11-12 (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), *Schafer v. AT & T Wireless Servs., Inc.*, No. CIV. 04-4149-JLF, 2005 WL 850459 (S.D.Ill. Apr. 1, 2005), and *Taylor v. Samsung Elecs. Am.*, No. 16 C 50313, 2018 WL 3921145 (N.D.Ill. Aug. 16, 2018)).

Comparing this case to *James* and *Treiber*, Mercedes argues that because Appellants supposedly acknowledge activating mbrace and activation occurs only in one of two scenarios, Appellants must have had inquiry notice. *See* Appellees' Resp. Br. 12. But Mercedes never presents evidence even on the threshold question of which activation method either Appellant used. Nor are Appellants attempting to rescind a contract to which they had notice and previously agreed. *See Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702-03 (7th Cir. 1999) (holding that the plaintiff could not renege on a contract she signed with a lawyer present merely by claiming she did not pay much attention to its terms). Instead, Mercedes merely assumes that Appellants had inquiry notice on its own say-so.

Mercedes explains that mbrace's first activation option permits subscribers to enroll at an auto dealership by clicking "I accept" on an iPad or computer.[2] *See* Grycz Decl. at 2. But other than stating that the screen contains an "I accept" button, Mercedes does not explain what Appellants may have seen or heard either prior to or as they clicked the button (if they clicked the button). It doesn't say what the button looked like or how it was placed on the screen. Nor does it say what was disclosed in that context. In contrast, the defendant in *Treiber* provided extensive details, offering a step-by-step

---

[2] On appeal, Mercedes claims for the first time that the "I accept" button was "adjacent to" the TOS Agreement. Appellees' Resp. Br. 5. But no evidence in the record supports this claim. Accordingly, it must be disregarded.

description of what the plaintiff would have experienced on the screen. *See* 474 F.3d at 382-85; *see also Auyeung v. Toyota Motor Sales, U.S.A., USA, Inc.*, No. 19 C 278, 2019 WL 3385189, at *1, 3-4 (N.D.Ill. July 1, 2019) (describing specific evidence of the plaintiff's experience when accepting Terms of Use and related policies).

The court cannot determine merely from the availability of an "I accept" button whether notice has been appropriately given. This is especially true where Mercedes is also silent about what Appellants may have been told during the activation process, either on screen or by a live person. There is no evidence, for example, that a dealership representative walked Appellants through the activation process, or verbally advised that clicking "I accept" would manifest assent to a specific set of terms.[3]

In the second activation option, mbrace subscribers enroll over the telephone, where a representative supposedly informs them about the TOS Agreement and information for accessing and reviewing it. *See* Grycz Decl. at 2. But the conclusions Mercedes draws about its own conduct are meaningless; what matters is the proof Mercedes offers of its conduct. The words by which notice is conveyed are an overriding consideration in whether parties to an alleged contract have been informed about a specific set of terms. *See Schafer*, 2005 WL 850459, at *1 (explaining that packaging had stated, among other

---

[3] Mercedes' argument that it sent subscribers a Welcome Email with a link to the TOS Agreement fails to convince on similar grounds. *See* Grycz Decl. at 2. Even if this were true, a finding of notice would require additional context, such as the email's heading, its content, and the appearance and context of the link. *See* Appellants' Br. 19-20.

things, that the "Terms and Conditions" related to the purchase were "included in the enclosed AT & T Wireless Welcome Guide"); *Taylor*, 2018 WL 3921145, at *1 (explaining that the Health & Safety and Warranty Guide accompanying a phone purchase stated: "Please read this manual before operating your device and keep it for future reference. This document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions"). In the absence of evidence, the district court erred by finding that Appellants had been informed of the TOS Agreement or how to find it. Legal conclusions masquerading as fact do not suffice.

And while evidence of the words conveyed is noticeably less in cases like *James*, that case presented a unique scenario in which the plaintiff already expected (or should have expected) to be bound to terms in the context of a promotional contest. *See* 417 F.3d at 675-78. Because the controversy here did not arise in a similar context, Mercedes needed to provide evidence of what Appellants were actually told.[4]

Moreover, Mercedes' claim that Appellants received copies of the TOS Agreement sometime after activation is also insufficient. *See* Appellees' Resp. Br. 13. Setting aside Mercedes' failure to identify any single specific instance of sending the TOS Agreement to Appellants, nor any instance when it was received, the mere receipt of a document, in

---

[4] Mercedes' argument that the Welcome Kit conferred inquiry notice also fails. *See* Appellees' Resp. Br. at 13. It asserts only that the Welcome Kit "informs" Appellants—a legal conclusion—that the service is subject to a TOS Agreement, but fails to factually support that conclusion. Grycz Dec. at 2; *see* Appellants' Br. 16-17.

and of itself, does not confer inquiry notice .[5] *Wilson v. Redbox Automated Retail, LLC*, 448 F.Supp.3d 873, 886–87 (N.D.Ill. 2020) (finding plaintiff's "mere receipt of an email from Redbox [noting update to Terms of Use] did not give rise to an agreement to arbitrate"). The facts here are different from cases like *Hill*, where the court held that a party conveyed notice when the plaintiffs received a copy of the terms. *See* 105 F.3d at 1148-50. In *Hill*, the terms were included in the same box as the product. *See id.* at 1148. Contemporaneous receipt of the terms with the product satisfied the requirement that the plaintiff, without further explanation, would know the terms related to the product.

But that is not true here. While Mercedes offers no specific explanation about sending the TOS Agreement, it admits that Appellants would not have received it (if they ever did) at the same time as the mbrace service. *See* Grycz Dec. at 4-5. Thus, Mercedes needed to offer specific evidence regarding the sending and receiving of the TOS Agreement, its form and language, and how Mercedes conveyed that it was related to the previously-activated mbrace service. *See* Appellants' Br. 20-21. Mercedes failed to fill these evidentiary holes.

Mercedes also argues that Appellants had inquiry notice because they subscribed to a service, and consumers ought to know that modern subscription services are governed by a set of terms. *See* Appellees' Resp. Br. 13 n.7. But even if the overall

---

[5] Mercedes similarly does not explain when it sent the Welcome Kit and Welcome Email, or when Appellants received them. *See* Appellants' Br. 16-17.

premise is true, Appellants' expectations about mbrace's governing terms does not eliminate Mercedes' burden to give Appellants adequate notice of the actual TOS Agreement, which included the arbitration provision. For example, in *James*, the mere fact that the plaintiff may have expected that the game was governed by a set of contest rules did not mean she had notice of those rules. *See* 417 F.3d at 678. McDonald's was still required to offer evidence of its efforts to confer notice by, among other things, affixing a reference to the rules on a french fry carton she purchased, with a short description. *See id.* at 675-78. Mercedes did not offer comparable evidence.

### B. Mercedes' Subjective Understanding that Appellants' Conduct Manifested Assent to the TOS Agreement Is Irrelevant Because Assent Is an Objective Standard

Mercedes argues that conduct may manifest assent and that Appellants' conduct led Mercedes to believe that Appellants had manifested assent. *See* Appellees' Resp. Br. 14-15. But a party's conduct only manifests assent if he or she has notice about the significance of his or her actions. And, in any event, Mercedes' subjective understanding that an agreement had been reached is immaterial.

Assent is "a question of fact" resolved under "an objective standard." *Arbogast v. Chi. Cubs Baseball Club, LLC*, 194 N.E.3d 534, 542 (Ill.App.Ct. 2021). A party's conduct may "indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it." *Id.* at 543. But "it must be clear that the conduct relates to the specific contract in question." *Id.* In other words, "the conduct

of a party is not effective as a manifestation of assent unless that party knows or has

reason to know that the other party may infer from his conduct that he assents." *Id.* at

544. Moreover, "[t]he circumstances of the transaction must provide the offeree with

reasonable notice that the terms of a contract are being offered and that certain acts or

conduct by the offeree will constitute acceptance of the offer." *Id.* Regardless of a party's

apparent manifestations of assent or the other party's subjective belief of acceptance, he

cannot be bound by a contract of which he is "unaware." *Id.* (quoting *Specht v. Netscape*

*Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)).

Mercedes argues that Appellants' conduct here manifested assent because each

Appellant used mbrace for several years. *See* Appellees' Resp. Br. 15. Mercedes claims

that it was both "reasonable" for Appellants to know that this prolonged conduct

manifested assent to the TOS Agreement and for Mercedes to understand the same. *Id.*

But Mercedes' argument merely assumes that Appellants had inquiry notice without

going through the evidentiary steps required to prove it.

For example, *in Boomer v. AT & T Corp.*, AT&T asserted that its mailing procedure

conferred notice and that the plaintiff's continued use of its service after receiving the

mailing created an inference of assent. 309 F.3d 404, 411 (7th Cir. 2002). To support this

assertion, AT & T submitted a declaration from the employee who had overseen mailing

the terms to its customers. *See id.* The employee explained that AT&T had started

mailing agreements to customers in June 2001, each mailing containing three

9

documents: the terms, a cover letter explaining the terms and why AT&T was sending it to them, and a list of frequently-asked questions and answers. *See id.* at 409. The employee stated that AT&T sent this mailing to the plaintiff in June 2001, via third-class mail, with forwarding service in an envelope separate from his monthly bill. The outside of the envelope specified: "ATTENTION: Important information concerning your AT&T service enclosed." *Id.* at 409, 411.

In addition to confirming that AT&T never received a notice from the post office that its mailing to the plaintiff went undelivered, the employee described in extensive detail each document's contents and how they conveyed to plaintiff that the agreement was related to his AT&T service. *See id.* at 409-11, 414. Under these circumstances, the court held that the plaintiff's continued enrollment in AT&T's service after receiving this mailing created an inference of assent. *See id.* at 416.

But here, there is no evidence from which to draw a similar inference. While Mercedes claims to have various procedures in place, they are meaningless without an explanation of how any of them informed mbrace subscribers generally, and Appellants specifically, about either the TOS Agreement's existence or its relationship to the previously purchased service. Where AT&T offered significant detail about its mailing procedures in *Boomer*, Mercedes substitutes bare conclusions. *See* Grycz Dec. at 2 (stating only that the Welcome Kit "informs" subscribers the mbrace service is subject to a TOS Agreement). Even when considered in the aggregate, Mercedes' procedures

amount to nothing more than a self-serving assumption by Mercedes that listing them alone confers inquiry notice. Because Mercedes failed to substantively describe its procedures, the court cannot infer any manifestation of assent through even if Appellants continued to use the mbrace service.

### C. Mercedes Did Not Establish a Policy or Practice of Sending Communications About the TOS Agreement to mbrace Subscribers

Finally, Mercedes argues that a corporate declaration describing its supposed mailing (or emailing) policies and practices eliminated its burden to demonstrate it sent specific communications to Appellants. *See* Appellees' Resp. Br. 16 (citing *Kass v. Paypal Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) and *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002)). But this argument elevates form over substance. Mercedes must not only describe its alleged procedures, it must offer corroborating evidence to show it followed those procedures. The Grycz Declaration does not do so and, thus, falls short of entitling Mercedes to a presumption that Appellants received the TOS Agreement.

The case law demonstrates how Mercedes failed to meet even the modest burden the law requires. In *Kass*, PayPal offered two declarations from members of its legal department to support its argument that it sent the plaintiff specific communications related to its mandatory arbitration provision. 75 F.4th at 697. In one declaration, the employee explained that (1) PayPal amended its "User Agreement" in October 2012 to include a mandatory arbitration provision, (2) a related "Policy Update" was posted to

11

its website, and (3) "a Notice about the Policy Update was also e-mailed to active PayPal users in October 2012." *Id.* (internal quotes omitted). The other employee explained that PayPal had a "practice of sending email notice to existing PayPal users of amendments to the User Agreement prior to those amendments going into effect," "PayPal sent the Policy Update email in October 2012 to all of its existing U.S. customers," and that because the plaintiff's account was active at the time, "she would have been within the group of U.S. PayPal account holders to whom the email was sent." *Id.* (internal quotes omitted). As a result, the court held that PayPal was entitled to a presumption that it sent the email because it provided "the needed evidence about both PayPal's usual practice in emailing amendment . . . and the use of that practice with the 2012 amendment."

Likewise, in *Tinder v. Pinkerton Security*, the defendant asserted that it had added a mandatory arbitration provision to its employee contracts and had sent specific communications related to the change in each employee's paycheck. 305 F.3d at 731. The brochure explained that disputes would be resolved by mandatory arbitration, the policy would go into effect on a certain date, and employees could refer to the question-and-answer section to better understand this policy. *See id.* The defendant offered two affidavits in support. *See id.* at 732. The first explained that the defendant had distributed copies of the brochure to each office with instructions to insert it into paycheck envelopes. *See id.* The legal department later issued a memo confirming that

the brochure had been distributed. *See id.* The second explained that the plaintiff "was paid through his office; that his office distributed the brochure to all of its employees along with their paychecks on the payday following the date [the defendant] instructed its district offices to circulate the brochure; and that [the plaintiff would have] received [it because] her salary [was received] by check, not by direct deposit."[6] *Id.* Given these declarations, the defendant offered evidence of both its general practices and the specific manner in which the brochure was delivered.

In contrast, Mercedes failed to offer a policy or practice of sending communications related to the TOS Agreement to mbrace subscribers generally, let alone Appellants specifically. Mercedes does not assert that it mailed or emailed all mbrace subscribers a notice on a certain date, nor that Appellants would have fallen within the category of persons to whom it would have been sent. Neither does Mercedes identify a timeframe within which it regularly sent TOS Agreements to subscribers; for example, it does not say it mailed the Welcome Kit to new subscribers within five business days after activation. At best, Mercedes argues there may have been vague and uncertain instances in which subscribers may have received a Welcome Kit and Welcome Email, or other communications referencing the TOS Agreement. *See* Grycz Decl. at 2. But without

---

[6] *See also Tabor Co. v. Gorenz*, 356 N.E.2d 1150, 1151-55 (Ill.App.Ct. 1976) (holding that proof of mailing was established by corroborating circumstances of mailing procedures, including evidence from several persons associated with these mailing procedures).

knowing the contents or context of these communications, Mercedes cannot claim a sufficiently established policy or practice.

And without evidence of a regular timeline or standard procedure, Mercedes cannot provide "evidence of corroborating circumstancing tending to establish the fact that the custom" was followed with respect to Appellants. *Kass*, 75 F.4th at 704 (quoting *Tabor & Co. v. Gorenz*, 356 N.E.2d 1150, 1154 (Ill.App.Ct. 1976)). As discussed above, Mercedes fails to identify how or when Appellants actually received the TOS Agreement, beyond identifying vague instances in which Mercedes claims the documentation may have been sent. *See Kass*, 75 F.4th at 703–04; *Tinder*, 305 F.3d at 736. Mercedes does not even identify basic evidentiary building blocks, such as the email or home addresses the TOS Agreements were supposedly sent to. And even if Mercedes sent them to Appellants, Mercedes' failure to describe their contents is fatal.[7] *See supra* Part I.A.[8]

---

[7] Perhaps attempting to distract from the Grycz Declaration, Mercedes accuses Appellants of taking a "myopic" view, ignoring other evidence. Appellees' Resp. Br. 17. But Mercedes' fatal flaw was failing to confer appropriate notice to Appellants regarding the TOS Agreement. *See* Appellants' Br. 8-20. The only evidence Mercedes offers relevant to that question is the Grycz Declaration.

[8] Mercedes also relies on *Kass* and *Tinder* to argue that Appellants' declarations fail to create a dispute of fact. Appellee's Resp. Br. at 19-21. But this argument puts the cart before the horse. Both *Kass* and *Tinder* considered whether an equivocal declaration rebuts an already-triggered "mailbox rule" presumption of delivery. *Kass*, 75 F.4th at 705; *Tinder*, 305 F.3d at 735; *see Boomer*, 309 F.3d at 415 n.5. The courts determined that an equivocal denial may not rebut the presumption. *Kass*, 75 F.4th at 704. But the Grycz

As a last-ditch effort, Mercedes unconvincingly attempts to distinguish two cases from Appellants' brief. *See* Appellees' Resp. Br. 17-19. In Mercedes' view, *Melvin v. Big Data Arts, LLC,* stands for the proposition that, at least with respect to activating mbrace on an iPad or computer, Mercedes cannot demonstrate notice without offering into evidence a print-out of the screen.[9] *See id.* at 17 (citing 553 F.Supp.3d 447 (N.D.Ill. 2021). Whether that is true or not is debatable; what is necessary, regardless of format, is evidence to prove notice in whatever form it might take. But nothing in either the *Melvin* decision or Appellants' argument necessitates a print-out. For example, a detailed description of the webpage may suffice. *See* 553 F.Supp.3d at 450-51. But neither Melvin nor this case included such a description. *See id.* at 451.

---

Declaration does not trigger the presumption because it fails to offer "proof of procedures followed in the regular course of operations." *Godfrey v. U.S.,* 997 F.2d 335, 338 (7th Cir. 1993) (finding no presumption that mailing was delivered without evidence of check mailing procedure or other proof). Because Mercedes is not entitled to the presumption and Appellants do not admit the agreements were received, a genuine and material factual dispute remains.

[9] If Mercedes must meet its burden by presenting a printout of what consumers encountered before entering into an agreement, then that is what it must do. Mercedes' manufactured umbrage comes precariously close to giving away its true motivation—the right to impose surprise terms upon consumers without having to account for the meeting of the minds at the core of every contract and, in particular, agreements to arbitrate. *See Carter v. SSC Odin Operating Co.,* 976 N.E.2d 344, 359 (Ill. 2012) ("Arbitration is a 'creature of contract'. . . .").

Mercedes' argument that the facts here do not present "a typical clickwrap case" is semantics.[10] Appellees' Resp. Br. 18. It claims that, unlike in *Melvin*, the presence of a dealership representative here should have eliminated any confusion Appellants may have had. *See* Appellees' Resp. Br. 18. But there is no evidence the dealership representative did anything but hand Appellants an iPad. *See* Grycz Decl. at 2. If Mercedes wanted to argue that this case was something other than a "typical clickwrap case," it needed to offer evidence proving that was so. *See supra* Part I.A. If this case is a "typical clickwrap case," it was only because the evidence Mercedes presented demonstrated this was a "typical clickwrap case." *See Gilbert v. I.C. System, Inc.*, No. 19-CV-04988, 2021 WL 292852, at *2 (N.D.Ill. Jan. 28, 2021) ("The party seeking to compel arbitration has the burden of establishing [with evidence] an agreement to arbitrate.").[11]

Mercedes also attempts to distinguish *Gilbert* to support its failure to offer "any facts regarding how or when" Appellants supposedly received and agreed to the TOS Agreement. 2021 WL 292852, at *7; Appellees' Resp. Br. 17. But this is precisely the flaw

---

[10] Importantly, Mercedes' failure to produce any of the documents supposedly presented to Appellants makes such distinctions impossible. Courts distinguish between "clickwrap," "browsewrap," and even "hybridwrap" agreements and apply different considerations for each category. *See Wilson*, 448 F.Supp.3d at 882–83; *Van Tassel v. United Mktg. Grp., LLC*, 795 F.Supp.2d 770, 789–93 (N.D.Ill. 2011). But because Mercedes provided no evidence about the format of any notice, there is some question even of the proper test to apply. This works against Mercedes, not for it.

[11] It is irrelevant whether the TOS Agreement discloses the arbitration provision and acts sufficient to constitute acceptance. *See* Appellees' Resp. Br. 18. Without notice of the TOS Agreement, assent cannot be given. *See supra* Part I.C.

*Gilbert* court identified. It determined that the necessary "fact-intensive" inquiry could not occur where the defendant's declaration failed to explain "how or when [the plaintiff] received the Terms and Conditions." 2021 WL 292852, at *7; *see* Appellants' Br. 13-14. Just as Appellants relied on *Gilbert* for this proposition, at least one other court has done the same. *See Fuentes v. Jiffy Lube Int'l, Inc.*, No. CV 18-5174, 2023 WL 5984284, at *5 & n.4 (E.D.Pa. Sept. 14, 2023) (rejecting the plaintiff's reliance on *Gilbert* as distinguishable because the "defendants [there] failed to allege any facts establishing how or whether the plaintiff received the terms and conditions").

Mercedes also argues that the facts are distinguishable here by suggesting that the Grycz Declaration is nothing like the one submitted in *Gilbert*. *See* Appellees' Resp. Br. 19. In *Gilbert*, the court held that the declaration did not include "any facts" that the plaintiff "was made aware of the Terms and Conditions at any point, that he ever saw the Terms and Conditions, or that he had the chance to review" them. 2021 WL 292852, at *7. According to Mercedes, because the Grycz Declaration asserts the various ways in which mbrace subscribers are exposed to the TOS Agreement, the two cases are incomparable.[12] *See* Appellees' Resp. Br. 19.

---

[12] Mercedes argues that Appellants draw a distinction between exposure to a physical and digital copy of the TOS Agreement and that such a distinction is legally irrelevant. *See* Appellees' Resp. Br. 19 n.8. But Appellants make no such distinction. Their argument is that the Grycz Declaration is factually insufficient to support Mercedes'

But whatever the differences, neither declaration satisfied the required burden. Indeed, the declaration offered in *Gilbert* went further than Mercedes' declaration because the declaration in *Gilbert* testified about the defendant's understanding of how the plaintiff had been exposed to the governing terms. *See* 2021 WL 292852, at *7 (stating that the plaintiff "was provided with the Terms and Conditions when he began his Sprint account and agreed to them through use and payment of the account services") (internal quotes and citations omitted). Nevertheless, the *Gilbert* court acknowledged that these conclusory and non-substantive assertions remained insufficient to conclude that assent had been given. *See id.* at *7-8; *See supra* Part I.A; Appellants' Br. 14-16.

## CONCLUSION

For the reasons stated above, Appellants respectfully request the Court to reverse the district court's order granting the motion to compel arbitration and remand with instructions to deny the motion and proceed with the action instead.

Respectfully submitted,

Dated: April 30, 2024                          By: */s/ David C. Wright*
                                               David C. Wright
                                               Steven A. Haskins
                                               Mark I. Richards
                                               MCCUNE LAW GROUP, APC
                                               3281 East Guasti Road, Suite 100
                                               Ontario, California 91761

---

claim that inquiry notice was given. *See Gilbert*, 2021 WL 292852, at *8 (explaining that the declaration failed to even describe "what format or how [the plaintiff] would have seen the Terms and Conditions").

dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 5,527 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in 12-point (11-point footnotes) Palatino Linotype style font, a proportionally spaced typeface, using Microsoft® Word for Microsoft 365 MSO (Version 2401 Build 16.0.17231.20236).

Dated: April 30, 2024

By: _/s/ David C. Wright_
David C. Wright
One of the Attorneys for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2024, the Reply Brief of Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 30, 2024

By: */s/ David C. Wright*
David C. Wright